IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRENDA N. WILLIS,

    Plaintiff,

vs.                                            CASE NO. CV-10-J-782-S

KIDD MANAGEMENT, LLC,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant Kidd Management Inc.'s motion for summary judgment (doc. 20), defendant's memorandum in support of said motion (doc. 20-1), defendant's evidentiary submissions in support of said motion (docs. 20-2–20-10), plaintiff's opposition to said motion (doc. 25), plaintiff's evidentiary submissions in support of said opposition (doc. 26), and defendant's reply (doc. 29). Having considered the motion and all other pleadings filed to date, the court finds as follows:

## Factual Background

Plaintiff Brenda Willis ("Willis") began working for defendant Kidd Management, Inc. ("Kidd Management") in July 1999. Willis Depo. 23. She began working as the store manager of Jack Rabbit, LLC ("Jack Rabbit"), a convenience

store and gas station. *Id.* Plaintiff's immediate supervisor was Alan Kidd, co-owner of Jack Rabbit. *Id.* at 25; Alan Kidd Decl. (from Dec. 14, 2010) ¶ 3 [*hereinafter* Alan Kidd Decl. I]. Willis supervised an assistant manager, Sharon King ("King"), and several cashiers. Willis Depo. 27. Plaintiff was responsible for disciplining, hiring, and firing employees; opening and closing the store; ordering groceries and supplies; operating the register; monitoring the security system; dealing with burglaries and robberies; checking vendors in for delivery; making bank deposits; stocking the ATM; and scheduling. *Id.* at 24, 26, 29–33. During regular hours of operation, a cashier and the assistant manager would operate the registers and assist customers, while plaintiff performed the aforementioned activities. *Id.* at 27. Whenever there were more than two customers at the register, Willis would suspend her other duties and run a register. *Id.* at 30–31.

    Willis reportedly experienced knee problems attributable to worn or torn cartilage, which caused her a great deal of pain and prevented her from standing for extended periods of time. *Id.* at 42–43, 47. While working for defendant, Willis underwent three surgeries due to depleted cartilage in both of her knees, all of which required her to take time off work. *Id.* at 43. On at least one occasion, she told Alan Kidd that she had knee problems. *Id.* at 69; Alan Kidd Decl. I ¶ 10. Plaintiff was rarely around Jack Kidd and she never spoke to him about her knee

problems, Willis Depo. 65, 79, although she alleges that he saw her outside work with a knee brace on, *id.* at 79, 95–96. Plaintiff stated that her knee problems did not affect the performance of her job duties. *Id.* at 46–47. Plaintiff also never requested a stool or other form of accommodation; she states that this is because stools were "unauthorized." *Id.* at 70.[1]

Prior to plaintiff's termination, the Jack Rabbit gas station was not performing well and profits had continued to decline for several years. Willis Depo. 37; Alan Kidd Decl. I ¶ 4. In order to decrease expenditures and increase profitability, Kidd Management decided to cut back payroll at the Jack Rabbit station, its largest expenditure. Alan Kidd Decl. I ¶¶ 5–6. Alan Kidd and Jeff Smith, the general manager of Jack Rabbit and Cowboy's 280 (another gas station and convenience store owned and operated by defendant), met with Willis and discussed terminating an employee–assistant manager King–in order to cut down on the store's payroll. Willis Depo. 40, 50; Alan Kidd Decl. I ¶ 7. Plaintiff stated that King was a good employee and she did not see the need to terminate her. Willis Depo. 40; Willis Aff. ¶ 6. They also discussed operating the cash register

---

[1]Plaintiff states that defendant had previously kept stools behind the cash register, but had removed them prior to her employment because cashiers sat on them instead of standing up to work the register. Willis Depo. 70, 98. She states that were she provided accommodation, she could have worked the cash register for any amount of time required of her. *Id.* at 96.

more frequently during peak business hours to account for the loss of a cashier. Willis Depo. 40–41; Alan Kidd Decl. I ¶ 7. Willis informed Alan Kidd and Smith that she had been having problems with her knee which required surgery, but that after surgery, she hoped to be able to work the cash register as much as needed.[2] Willis Depo. 41; Willis Aff. ¶ 9. Defendant considered plaintiff's refusal to terminate King and refusal to operate the cash register more frequently to be insubordination, a terminable offense under company policy; thus defendant decided to terminate plaintiff's employment.[3] *See* Alan Kidd Decl. I ¶¶ 8–9, Exh. 2 at 13, 16.

On April 24, 2008, Jack Kidd, owner of Kidd Management and co-owner of Jack Rabbit, called Willis to his office, stated that he "had to make some changes," and terminated her employment.[4] Willis Depo. 26, 38–39.[5] Defendant then

---

[2]Plaintiff cannot recall which knee was at issue at the time of her termination. Willis Depo. 45.

[3]Plaintiff states that she was not ordered to terminate the employee, Willis Aff. ¶ 7; she argues that, as manager, she should conceivably be able to offer a favorable opinion about an employee without engaging in insubordination, Pl.'s Brief at 15. Plaintiff further states that if she had been ordered to terminate the employee, she would have done so. Willis Depo. 50.

[4]Jack Kidd ultimately made the final decision to terminate plaintiff's employment. Alan Kidd Decl. I ¶ 9.

[5]Plaintiff was never given any warning of her termination, or told to correct any actions. Willis Depo. 66–67. Just two days before she was terminated, plaintiff received a $500 bonus check from defendant. *Id.* at 84–85. This check was part of plaintiff's regular compensation

transferred Mark Mosteller ("Mosteller"), the store manager from its Cowboy's 280 station, who is disabled and walks with the assistance of a cane, to operate the Jack Rabbit Station. Alan Kidd Decl. I ¶ 13, 17; Mosteller Decl. ¶ 11.[6] When Mosteller began working, he laid off one cashier and assumed responsibilities as backup cashier when the store was busy. Mosteller Decl. ¶ 5. He served as the Jack Rabbit store manager from April 24, 2008, to July 7, 2008, while defendant was training assistant manager King to be the store manager. Alan Kidd Decl. I ¶ 18–19; Mosteller Decl. ¶¶ 4, 6. King was promoted to store manager and has served in that position since July 2008. Alan Kidd Decl. I ¶ 19–20.

Plaintiff filed this suit against defendant seeking damages for gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and disability discrimination and failure to accommodate under the Americans with Disabilities Act of 1991 ("ADA") resulting from her termination. *See* Compl. Defendant states that it terminated plaintiff due to budget concerns and because she engaged in insubordination by refusing to terminate an employee and refusing

---

package. Alan Kidd Decl. (from Jan. 25, 2011) ¶ 2 [*hereinafter* Alan Kidd Decl. II].

[6]Mosteller was hired on April 21, 2008, to serve as the store manager of the Cowboy's 280 station, so that Jeff Smith could officially move up to the position of general manager and oversee both gas stations. *See* Alan Kidd Decl. I ¶ 15–16. Prior to his transfer, Mosteller trained at the Cowboy's 280 store learning its operations, policies, and procedures, which are different than those of Jack Rabbit. *See id.* at ¶ 16; Mosteller Decl. ¶ 3.

to work the cash register. Def.'s Brief at 20–21.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970).  Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

## Disability Discrimination

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[7]

In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that: "(1) [she] has a disability; (2) [she] is a "qualified individual," [meaning that she is] able to perform the essential functions of the employment position . . . with or without reasonable accommodation; and (3) the defendant unlawfully discriminated against [her] because of the disability." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005) (quoting *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.

---

[7]All of the conduct alleged in Willis's complaint occurred prior to the effective date of the 2008 amendments to the ADA. *See* ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110-325, 122 Stat. 3553 (2008) (becoming effective January 1, 2009). Willis has not asserted that the Act should be applied retroactively; therefore, the court will not address the possible retroactivity of the ADAAA, and will apply the ADA as it existed before the amendments. *See Dickey v. Dollar Gen. Corp.*, 351 Fed.Appx. 389, 391 n.3 (11th Cir. 2009); *Fikes v. Wal-Mart, Inc.*, 322 Fed.Appx. 882, 883 n.1 (11th Cir. 2009) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)).

2000)); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir. 2004). If a plaintiff is successful in establishing her prima facie case, she has created a presumption of discrimination, and the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its employment action. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001)). Once the defendant produces such a reason, the burden shifts back to the plaintiff to prove that the defendant's reason was pretextual and that defendant intentionally discriminated against her because of her disability. *Cleveland*, 369 F.3d at 1193; *Wascura*, 257 F.3d at 1243.

As set out below, the court finds that plaintiff has failed to establish a genuine issue of material fact regarding whether she is disabled within the meaning of the ADA. Thus, plaintiff's disability discrimination claim fails as a matter of law and defendant's motion for summary judgment on that claim is due to be granted.

A "disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an

individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The EEOC has further defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The EEOC's Interpretive Guidance, appended to its regulations, establishes that standing is a major life activity. 29 C.F.R. app. pt. 1630, § 1630.2(i).

A person's abilities are "substantially limited" when they are "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the . . . average person . . . ." 29 C.F.R. § 1630.2(j)(ii). Courts consider factors such as: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Sutton v. Lader*, 185 F.3d 1203, 1208–09 (11th Cir. 1999) (emphasis omitted) (citing 20 C.F.R. § 1630.2(j)(2)). A plaintiff must offer evidence "that the extent of the limitation . . . caused by [her] impairment . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 198 (2002), *partially superceded*

*by statute*, ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110-325, 112 Stat. 3553. A diminished activity tolerance for normal daily activities does not constitute a disability under the ADA. *Hillburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1228 (11th Cir. 1999) (stating that "diminished activity tolerance" is not the same as substantial limitation). "[W]hether a person has a disability under the ADA is an individualized inquiry," determined on a case-by-case basis. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

      This court finds that standing is a major life activity. However, this court further finds that plaintiff has failed to establish that she was substantially limited in her ability to stand. Plaintiff's knee problems have never interfered with the performance of her job duties. Willis Depo. 46. Aside from her own testimony, she has provided no evidence or medical documentation that she has issues which prevent her from standing for extended periods of time. She has been able to function at this job, which regularly requires that she operate the cash register and otherwise be on her feet, from 1999 to 2008 without incident. Furthermore, she provides no evidence as to the time limits or specifics of her limitation, instead offering vague testimony that she has some diminished tolerance for standing. Given the lack of specific evidence and plaintiff's ability to perform the standing

required of her job for nearly a decade, this court finds that any alleged limitation in plaintiff's ability to stand does not rise to the level of a disability. *See Darwin v. Principi*, 2006 WL 5079473, at *8 (M.D. Fla. 2006), *aff'd*, 221 Fed. Appx. 918 (11th Cir. 2007) ("[A]ppellate courts have generally held that the inability to stand . . . does not make a condition disabling."); *Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004) (holding that someone whose ability to stand is "moderately below average" is not disabled under the ADA). Thus, plaintiff has failed to prove she has a disability for the purposes of the ADA.[8]

The conclusion that plaintiff has failed to prove she is disabled under subsection (A) of the disability definition does not end the court's inquiry. Under subsection (C), an individual who is "regarded as" disabled by his or her employer qualifies as disabled for purposes of the ADA. *See* 42 U.S.C. § 12102(2)(C). A person is "regarded as having such an impairment" if she "has a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation." 29 C.F.R. § 1630.2(*l*). "[T]he mere

---

[8]This court questions whether plaintiff's alleged impairments are permanent as required by the ADA, given that they can be fixed by surgery. *See Sutton v. United Air Lines*, 527 U.S. 471, 482–83 (1999) ("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."). However, since this court finds that plaintiff is not substantially impaired in her ability to stand, it need not resolve this issue.

fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled. . . . [A] plaintiff must first introduce substantial evidence that the employer regarded [her] as having a permanent or long-term impairment." *Sutton*, 185 F.3d at 1209. "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Hilburn*, 181 F.3d at 1230.

Plaintiff has failed to establish a genuine issue of material fact as to whether she was regarded as having a disability. The only evidence plaintiff offers to prove that she was regarded as having a disability is that she mentioned to Alan Kidd that she may need knee surgery. She has not shown that Jack Kidd, who ultimately terminated her, knew about any knee problems she may have suffered from.[9] Similarly, she has provided no evidence that Alan Kidd, Jack Kidd, or anyone else at Kidd Management believed she was substantially limited in her ability to stand or believed she could not perform her job because of any alleged knee problems.[10] The mere fact that plaintiff informed Alan Kidd of her need for surgery, without

---

[9]Plaintiff's assertion that Jack Kidd saw her outside of work with a knee brace on is insufficient to prove that he knew of her knee problems.

[10]Plaintiff states that she "never dealt with Jack Kidd very often," Willis Depo. 78, that she never talked to Jack Kidd about her knee, *id.* at 79, and that she and Alan Kidd "had a very good rapport . . . ," *id.* at 74.

more, does not show that he or anyone else regarded her as having a substantially limiting impairment.

Finally, plaintiff cannot prove she has a record of a disability since she has provided no records or evidence that she has been classified as having a physical impairment that substantially limits a major life activity.

Thus, viewing the evidence in the light most favorable to the plaintiff, this court finds that plaintiff has failed to establish a genuine issue of material fact as to whether she was disabled. Thus, summary judgment shall be granted to defendant on plaintiff's disability discrimination claim.

## Failure to Accommodate

In order to establish a prima facie case of disability discrimination by failure to make reasonable accommodation, plaintiff must show that (1) she was disabled, (2) she was otherwise qualified, and (3) a reasonable accommodation was not provided. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). The burden is on the employee to inform the employer that accommodation is needed and to request specific accommodation. *Id.* at 1255–56. An employee's failure to request a reasonable accommodation is fatal to the plaintiff's prima facie case. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Even if plaintiff can prove she is a qualified individual with a disability, this

court finds that plaintiff's claim fails because she never requested any form of accommodation. Plaintiff states that she could stand for any length of time had she been provided a stool, but she admits that she never asked that one be provided. Willis Depo. 70, 98. Her argument that defendant had removed chairs and stools from the area prior to her employment there does not relieve her of her burden to request accommodation. Plaintiff has provided no evidence that stools were absolutely prohibited or that those requesting a stool for legitimate reasons would be denied; similarly, she has not provided any evidence showing that a stool would not have been provided or authorized for her, and her alone, had she asked for one.

Plaintiff argues that the burden to request accommodation can be ignored when the disability is obvious. *See* Pl.'s Brief at 23–24. However, without evidence that her condition had suddenly worsened, plaintiff's previous ability to perform the essential functions of her job without accommodation made her alleged disability and need for a stool nonobvious. Therefore, plaintiff was not relieved of her burden to request accommodation.

Plaintiff also alleges that she was denied an accommodation by not being allowed to obtain surgery for her knee. Pl.'s Brief at 24. However, she has provided no evidence that anyone at Kidd Management told her she would not be allowed to

take time off of work to obtain any surgery.[11] The fact that plaintiff was terminated before she received the surgery does not provide her with a claim for failure to accommodate.

Thus, this court finds that plaintiff has failed to establish a genuine issue of material fact on her failure to accommodate claim.

## Gender Discrimination

In the absence of direct evidence of discrimination, courts analyze Title VII claims under the *McDonnell-Douglas* burden-shifting analysis, which first requires plaintiff to create an inference of discrimination by establishing a prima facie case. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Id.* If the employer meets this burden of production, the plaintiff must then establish that the defendant's proffered reasons were pretext for illegal discrimination. *Id.* (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248,

---

[11]In fact, plaintiff states that she was able to take time off work twice previously in order to have surgery. Willis Depo. 43.

255–56 (1981)).

To establish a prima facie case of gender discrimination under Title VII, plaintiff must generally prove: (1) that she is a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that she was treated less favorably than a similarly situated male. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842–43 (11th Cir. 2000).

Assuming that plaintiff meets her prima facie case, defendant properly produced legitimate non-discriminatory reasons for its actions. The defendant must "clearly set[] forth, through the introduction of competent evidence, the reasons for plaintiff's discharge." *Conner v. Fort Gordon Bus. Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985). This burden is "exceedingly light," and is "merely a burden of production and not a burden of proof." *Id.* Defendant's proffered reasons of budget concerns and insubordination satisfy this burden.

Finally, this court finds that plaintiff cannot demonstrate that defendant's proffered legitimate non-discriminatory reasons for her termination were pretext for gender discrimination. A plaintiff may demonstrate pretext by directly persuading the court that a discriminatory reason more likely motivated the employer, or by indirectly showing the employer's proffered reason is unworthy of credence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

This can be done by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder would find them unworthy of credence." *Combs*, 106 F.3d at 1538.

Plaintiff attempts to prove pretext by taking each of defendant's reasons for her termination and arguing that they are implausible. *See* Pl.'s Brief at 13–17. However, none of her arguments relate to any alleged gender discrimination; rather, all arguments relate to her alleged disability. Furthermore, plaintiff provides no evidence, other than the fact that she was replaced by a male, to show any gender discrimination.[12] She has not provided any evidence of gender-based comments or biases to support this claim. Thus, this court finds that plaintiff has failed to establish a genuine issue of material fact as to her gender discrimination claim.

## Conclusion

Having considered the foregoing and finding that the plaintiff has failed to establish a genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that defendant's motion for summary judgment (doc. 20)

---

[12] *See, e.g.*, Willis Depo. 64 ("Q. Okay, other than the fact that you contend that you were replaced by a white male, what other facts are you aware of that support your belief that you were discriminated against because of your gender? A. I really don't have any.")

be **GRANTED**.  The court shall so rule by separate order.

**DONE** and **ORDERED** this 16th day of February 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE